PONTIAC KNIT BOOT CO. *v.* MERINO SHOE CO.

*(Circuit Court, D. Maine. June 2, 1887.)*

PATENTS FOR INVENTIONS—SUCCESSIVE ASSIGNMENTS—PRIORITY—TRUST—CONVEYANCE.

One who procures from an inventor and records an assignment of his interest in the invention, with knowledge of a prior unrecorded assignment, and thereupon procures the patent to be issued in his own name, will be deemed to hold the title in trust for the first assignee, and the latter may compel a conveyance. In such case the prior assignee is not sufficiently protected without a conveyance, since his rights depend upon notice,.as to which the record of the assignments can show nothing.

In Equity. On demurrer to the prayer for relief.
*Wells W. Leggett* and *William L. Putnam*, for complainant.
*Livermore & Fish*, for respondent.

WEBB, J. The bill shows the following facts:
Prior to January 13, 1885, Samuel G. Alexander, claiming to be the inventor of an improvement in felt boots, with the intention of procuring a patent therefor, caused specifications and an application to be prepared;. but before filing them in the patent-office, on the date mentioned, he assigned all his right and interest in his invention to C. E. Wakeman & Co. In the assignment was a request that the letters patent should be granted and issued to the assignee. January 14, 1885, Wakeman & Co. assigned all the rights and interest thus acquired to the complainant. Through some misunderstanding or inadvertence, the assignment to Wakeman & Co. was not recorded until March 4, 1886, and that to the complainant till March 18, 1886. The application, with necessary specifications, was filed on or about January 27, 1885. Before any patent was granted, an interference was declared between this application and

one filed later by a party whom the defendant succeeds and represents. After long controversy in interference, a decision in favor of Alexander was rendered. From this decision an appeal was taken to the examiners in chief.

On January 26, 1886, while this appeal was pending, with full knowledge and notice of the successive assignments by Alexander to Wakeman & Co., and by Wakeman & Co. to the complainant, and that they covered the same invention for which a patent was applied for, and with which it was contesting the interference, the defendant secretly and fraudulently induced and prevailed upon Alexander to make to it an assignment of all his right, title, and interest in the said invention, and any letters patent that might be granted therefor, and to direct that the patent be issued to the defendant. The defendant, knowing that there had been no record made of the earlier assignments, caused that which it had thus obtained to be at once recorded, and then, without notice to the complainant, withdrew its appeal in the interference, pressed Alexander's application to allowance, paid the final fee of the patent-office, and obtained letters patent dated February 23, 1886, granted and issued in its own name as assignees.

Upon these facts the bill, with other relief asked, prays that the defendant "may be decreed and compelled to assign to the complainant, its successors and assigns, all the right, title, and interest in said letters patent, as conveyed to the defendant" by the assignment from Alexander dated January 26, 1886. To this prayer the defendant demurs, for the reason "that it appears in and by said bill that the title to the letters patent therein mentioned is already in the complainant."

The cases *Gayler* v. *Wilder*, 10 How. 477, and *United States Stamping Co.* v. *Jewett*, 7 Fed. Rep. 877, it is contended fully sustain the position of the defendant.

In *Gayler* v. *Wilder* the assignment was recorded long before the patent was granted, and the letters patent were issued to the inventor who had made that assignment. In *Stamping Co.* v. *Jewett* the assignment was made before any patent was granted, and, though not recorded till after the letters patent were issued to the inventor and assignor, they were still recorded before any rights, interest, or claim of others intervened. In both those cases the records of the patent-office plainly showed the rights and relations of the parties. As between the inventors and their assignees, the title of the latter was complete on the execution of the assignments, and became good against everybody when due record was made.

In the present case the assignment under which the complainant claims was indeed executed and delivered by the inventor before the rights or claims of others arose, but it was not recorded for more than a year after. In the mean time the inventor made and delivered another assignment to the defendant, which was promptly recorded, and, pursuant to its request, the letters patent were issued to the second, and, for aught that appeared on the records of the patent-office, the innocent, assignee. "The patent having been issued directly to the defendant, it acquired the legal title." *Perkins* v. *U. S. Electric Light Co.*, 24 O. G.

204, 16 Fed. Rep. 513. The tardy recording of the first assignment does not divest that title, nor make it inure to the benefit of the complainant, nor does it tend to such consequences. The complainant's superior rights, if it has superiority, depend, not on that record, but upon the defendant's knowledge at the time it took the assignment to itself.

As the records of the patent-office stood at the date of the letters patent, if the defendant had been a *bona fide* purchaser for a valuable consideration, without notice of any pre-existing assignment to the complainant, the rule established in *Gayler* v. *Wilder* would have given it the legal title, even though the letters patent had issued in the name of its assignor. How, under the same state of the record, can it be doubted that it acquired the legal title in a patent for which the letters issued directly to it? The assignment to Wakeman & Co., under which the complainant claims, not being seasonably recorded, was void against subsequent purchasers for a valuable consideration, without notice. Rev. St. § 4898. The defendant was *prima facie* such a purchaser, and, having duly recorded its title, become, so far as the records show, the rightful and legal owner of the patent. Or if these assignments, executed prior to the allowance of the patent, are not such instruments as are referred to in section 4898, still they must be recorded before the assignees could demand that the letters patent should be issued in their name. Rev. St. § 4895. All an assignee would have until such record should be made would be the right to have it made, and thereby to become entitled to the grant of letters patent. Neglecting to secure the benefit of the assignment to it by causing seasonable record thereof, the complainant made it possible for the defendant to take advantage of its later assignment, and acquire the letters patent, which, in the absence of notice of prior rights in the complainant, would give an indefeasible legal title. Even with such notice, the legal title was in the party to whom the patent was granted, it never having transferred or assigned its interest and rights. But it was a title subject to the superior equitable rights of the complainant. But those equitable rights, depending, as they do, on the fact of knowledge on the part of the defendant, are not so evident and notorious by the record that it can be said, as was the case in *Gayler* v. *Wilder*, that "to require another transfer would be mere form."

Until the patent was granted and issued, no legal title was in any person, or had any existence. There was only an inchoate right to the creation of such title, which right the inventor could assign, and, upon proper record of the assignment, the title could be established in the assignee. Conveyance of the inchoate right, if unrecorded, gave no such privilege; if recorded, it took from the inventor the power to secure to himself that title. Alexander, the inventor, having this inchoate right, by his transfer to the complainant, placed it in condition, by proceeding in the manner which the law requires, to make that right perfect and absolute. By neglecting such proceeding, the complainant left it in the power of the inventor himself to change the inchoate right into the full and absolute title. Had he done this only, his assignment, as is decided in *Gayler* v. *Wilder*, would have "operated upon the perfect

legal title which Alexander had a lawful right to obtain, as well as upon the imperfect and inchoate interest which he actually possessed" at the date of that assignment. Instead of pursuing this course, he made a new conveyance of the inchoate and imperfect right, and put it in the power of his second assignee to proceed "in the manner which the law requires," and to secure to itself the "perfected legal title." The second assignee did so proceed. It caused the assignment to be entered of record in the patent-office, and demanded and obtained the letters patent in its own name. But, having full notice of the assignment to the complainant, it must be held to have fraudulently acquired the legal title which of right should have been granted to the complainant. "It becomes then the ordinary case of a party acquiring, by false and fraudulent means, a legal title to property to which another has the better right and which he would have obtained, had the facts as they existed been truly represented. In such case equity will compel the holder of the legal title to transfer it to the party who was justly entitled thereto." *White* v. *Cannon,* 6 Wall. 449. "Where a party has acquired the legal title to property to which another has the better right, a court of equity will convert him into a trustee of the true owner, and compel him to convey the legal title." *Stark* v. *Starrs,* 6 Wall. 419. "The most usual mode [of granting relief] is to compel the defendant in person to convey to the plaintiff." *Silver* v. *Ladd,* 7 Wall. 228.

That the cases just cited were controversies under patents for lands does not impair their weight here. In them the patents conveyed to the patentee a title previously held by the United States. In this the patent created a title which had never before existed, but which the government had power to bring into existence. No assignment, transfer, or conveyance of any right or title, inchoate or complete, to operate upon his title conferred on him by the letters patent, and to bring it within the principle of *Gayler* v. *Wilder,* and make it inure to the complainant, has been made by the defendant. Want of privity cannot affect the rights of these parties. Demurrer overruled. Defendant to have to July rules to answer further.