CHANDLER TAFT *vs.* WILLIAM DICKINSON.

The understanding which one party to a contract had of its meaning, if not communicated to the other party, is not admissible in evidence in his own favor, in an action in which the effect of the contract is in controversy.

REPLEVIN of a horse, carryall and chaise.

At the trial in the superior court, before *Vose*, J., it appeared that in 1855 George C. Taft, a brother of the plaintiff, was the owner of the horse and carryall; that he failed in that year, and they passed into the possession (though for what consideration did not appear) of one Bancroft, who had been his clerk; that Bancroft sold the same to the plaintiff in 1855, taking his note therefor, which the plaintiff has never paid; that in March 1858 the plaintiff mortgaged said property, together with some machinery, to William A. Wheeler, to secure three notes given by himself for a debt of said George; that on the 20th of October 1858 Wheeler assigned the notes and mortgage to the defendant for a valuable consideration, and on the same day the plaintiff executed a bill of sale of the machinery to the defendant, and on the next day a bill of sale of the other property, and gave them to said George to be delivered to the defendant, and they were so delivered. The plaintiff was permitted to testify, under objection, that said George brought the bills of sale to him to sign for the purpose of enabling the defendant to give a

clear title to the mortgaged property, and that he signed them with the understanding that the notes of Wheeler, described in the mortgage, should first be paid, and the balance returned to the plaintiff. The defendant testified that when the bills of sale were delivered to him by said George, no such condition or understanding was stated to him, but that he understood that the bills of sale were given to him to enable him to sell the property and give a good title.

The plaintiff introduced evidence tending to show that the defendant, after the assignment of the mortgage to him, sold the machinery included therein and realized a sum therefrom much larger than the amount due on the notes; and that without the plaintiff's consent he applied said sum to the payment of a debt of said George, and not to the payment of the notes, and still retained the property replevied to satisfy the notes; and that in July 1859 he proceeded to foreclose the mortgage.

The defendant introduced evidence tending to prove that the property replevied, and the machinery included in the mortgage, were in fact the property of said George, but were held in the plaintiff's name as a mere cover, and that said George had always been the real owner thereof, and negotiated the arrangement by which the defendant took the assignment of the notes and mortgage, and the bills of sale, and that he executed to the defendant a written assent to the sale of the machinery and the appropriation of the proceeds thereof as above stated.

The judge instructed the jury that, if the plaintiff assented to no different appropriation of the proceeds of the mortgaged machinery than that contemplated by the mortgage, then the defendant could not lawfully make any different appropriation of it, and it was his duty to apply it in satisfaction of the debt secured by the mortgage, and that the receipt by the defendant from a part of the mortgaged property of a sum sufficient to pay this debt operated in law as a satisfaction and payment thereof, and he could not hold or retain the rest of the mortgaged property as against the plaintiff; but that the plaintiff, in order to maintain this action, must satisfy them that he was the

owner of the property replevied, and entitled to the possession thereof at the time of the service of the writ; and that, if the transfers by George C. Taft to Bancroft and by Bancroft to the plaintiff were merely intended as a cover to conceal the true title, and it was understood between the parties that George C. Taft should continue to be the real owner, the plaintiff would not be entitled to maintain this action.

The jury returned a verdict for the plaintiff, and the defendant alleged exceptions.

*P. C. Bacon & E. B. Stoddard,* for the defendant.

*W. A Williams,* for the plaintiff.

HOAR, J.   The testimony of the plaintiff, that the understanding was, at the time he signed the bills of sale, that they were only executed to enable the defendant to give a good title when he should sell the mortgaged property, was not prejudicial to the defendant, because the defendant testified that such was also his own understanding.   But the plaintiff was allowed, against the defendant's objection, to testify further, that he signed them with the understanding that the notes described in the mortgage should first be paid, and the balance returned to the plaintiff.   This was wholly inadmissible.   The defendant testified that no such understanding was known to him; and it does not appear that the plaintiff communicated it to any one. The understanding which one party to a contract has of its meaning is obviously not evidence in his own favor, and against the other party, when the effect of the contract is in controversy.   The verdict must therefore be set aside, and a new trial granted.   The other rulings and instructions to which exception was taken, do not seem to have been erroneous in any material particular.

The chief question on which the case depends, would appear to have been this: Under what contract or for what purpose did the defendant receive the bills of sale?   If to sell the property, and apply the surplus, after payment of the mortgage debt, to pay the debts of George C. Taft, the plaintiff had enabled George C. to make such a contract by intrusting him with the bills of sale.   If, on the other hand, the understanding which

the plaintiff testified he had was an understanding to which the defendant agreed, then the plaintiff would be entitled to recover.

*Exceptions sustained*